Yun Fen JIN, Petitioner,

v.

Alberto GONZALES, Respondent.

No. 03–4719.

United States Court of Appeals, Second Circuit.

Jan. 27, 2006.

Karen Jaffe, New York, N.Y., for Petitioner.

Caroline J. Bloch, Assistant United States Attorney (for Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania), Pittsburgh, P.A., for Respondent.

Present: Hon. ROBERT A. KATZMANN, Hon. PETER W. HALL, Circuit Judges, and Hon. EDWARD R. KORMAN, District Judge.*

## SUMMARY ORDER

Yun Fen Jin, a native and citizen of the People's Republic of China, petitions this Court for review of a March 27, 2003 decision of the BIA affirming the December 21, 1999 decision of the Immigration Judge ("IJ") denying Jin's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). Jin's application was based on her alleged persecution by the Chinese birth control authorities as demonstrated by her forcible sterilization in 1983 after the birth of her second child and her fear that she would be jailed and fined if she returned to China. We assume the parties' familiarity with the underlying facts and procedural history of the case.

Where, as here, "the BIA agrees with the IJ's conclusions that an asylum applicant is not credible and emphasizes particular aspects of the IJ's decisions, we review both the BIA's and the IJ's opinions." *Ming Xia Chen v. BIA,* 435 F.3d 141, 143 (2d Cir.2006). We review only the denial of withholding of removal, as we are without jurisdiction to review the IJ's conclusion that Jin was time-barred from pursuing asylum, *see Xiao Ji Chen v. DOJ,* 434 F.3d 144, 146 (2d Cir.2006),[2] and as Jin has not pursued her CAT claim on appeal and has therefore waived it, *see Yueqing Zhang v. Gonzales,* 426 F.3d 540, 542 n. 1 (2d Cir.2005).

We review factual findings under the substantial evidence standard, under which "a finding will stand if it is supported by reasonable, substantial, and probative evidence in the record when considered as a

---

* The Honorable Edward R. Korman, Chief United States District Judge for the Eastern District of New York, sitting by designation.

2. We note, nonetheless, that the BIA did not specifically affirm this conclusion, and instead mistakenly stated that the IJ had pretermitted the asylum application. On remand, the BIA may wish to rectify this error.

whole." *Secaida–Rosales v. INS*, 331 F.3d 297, 307 (2d Cir.2003) (internal quotation marks omitted). Credibility determinations are generally questions of fact subject to this standard, but "when a credibility determination analyzing testimony is based on flawed reasoning, it will not satisfy the substantial evidence standard." *Id.* "Nevertheless, we may affirm an adverse credibility finding even when the IJ's reasoning is deficient in certain respects, provided that despite any errors—considered in the context of the IJ's entire analysis—we can state with confidence that the IJ would adhere to his decision if we were to remand." *Xiao Ji Chen*, at 158.

Because we cannot make such a statement with confidence, we find remand warranted in this case. The IJ based her adverse credibility finding in large part on Jin's apparent confusion about whether she had been sterilized in January 1983 or December 1983, noting that, while it might be easy to confuse whether an event took place in sequential months of the same season, Jin's confusion was between January and December of the same year. However, when asked to explain this seeming contradiction, Jin testified that she had momentarily been confused between the date she had her IUD removed, which was in January 1983, and the date of her sterilization, which was in December 1983. The IJ did not acknowledge, much less provide a "reasoned evaluation" of, this explanation, and the adverse credibility finding accordingly suffers from "flawed reasoning." *See Cao He Lin v. DOJ*, 428 F.3d 391, 403 (2d Cir.2005). Similarly, the IJ noted that Jin had failed to produce a certificate of sterilization even though she had produced other pieces of documentation, expressing disbelief that the flood Jin described had destroyed the sterilization certificate but not the other documents. Yet the IJ failed to address Jin's explanation that the other documents were not destroyed in the flood because she had already sent them to the United States to support her husband's asylum application. While it was not improper for the IJ to use the absence of the sterilization certificate as a factor in making her adverse credibility determination, it was improper for the IJ not to consider Jin's explanation. *See Diallo v. INS*, 232 F.3d 279, 289 (2d Cir. 2000).

We are additionally concerned that the adverse credibility finding seems to have been based in part on an incomplete understanding of the legal framework at the time Jin was sterilized in 1983 and at the time her husband applied for asylum in 1994. In addition to finding the husband's testimony "generally vague, confused and contradictory," the IJ expressed concern, echoed by the BIA on appeal, that Jin's husband did not mention Jin's sterilization in his own asylum application even though he asserted before the IJ who heard Jin's case that it was the basis for that application. The IJ also found a "serious contradiction" in Jin's having waited thirteen years after her sterilization to leave China. However, neither the IJ nor the BIA acknowledged that it was only in 1996 that Congress revised the asylum law to incorporate persecution at the hands of birth control officials into the definition of "political opinion" that can give rise to a grant of asylum or withholding of removal. *See Ke Zhen Zhao v. DOJ*, 265 F.3d 83, 91–92 (2d Cir.2001) (discussing background to change in law). Until that statutory change, asylum applications based on opposition to China's family planning policies were governed by the BIA's decision *In re Chang*, 20 I. & N. Dec. 38, 43, 1989 WL 247513, 1989 BIA LEXIS 13 (BIA May 12, 1989), which had held that China's one-child policy was not persecutory on its face, but that an applicant seeking asylum or a withholding of deportation had to

offer "evidence that persecution would be or was taken for a reason other than general population control." *Zhao*, 265 F.3d at 91, citing *In re Chang*, 20 I. & N. Dec. at 40, 47. As we explained in *Zhao*, in 1996, after Congress revised the asylum law,

> the [BIA] acknowledged that the Act retroactively superseded the view expressed in *In re Chang*, and held that an alien forced to undergo sterilization pursuant to a population control program should be deemed to have suffered past persecution on account of political opinion and was thereby entitled to the regulatory presumption of a well-founded fear of future persecution.... The next year the Board ruled in *In re C–Y–Z–* that an alien can establish past persecution and become entitled to the presumption of a well-founded fear of future persecution if he can show that his spouse was forced to undergo sterilization.

*Zhao*, 265 F.3d at 92 (citations omitted). Since Jin's husband filed his asylum claim in 1994, there would have been no reason for him to emphasize his wife's sterilization, even though he did list harassment by the birth control authorities as one of his reasons for asylum. And since the basis for Jin's application was her sterilization, she had no case until the law changed in 1996, which is when she says she came to the United States. In the absence of any discussion of the change in the law, the reliance of the IJ and BIA on these pre–1996 omissions cannot sustain an adverse credibility finding.

Finally, it seems that Jin's husband was granted asylum on August 8, 2003. We do not know the grounds upon which his asylum application was granted, but if one of the grounds was indeed harassment by the birth control authorities, as he said in his written application, for which presumably testimony would have been given about his wife's sterilization, it would be paradoxical if Jin's alleged forcible sterilization served as the basis for a positive credibility finding for Jin's husband but a negative credibility finding for Jin herself. Because Jin's husband's asylum was granted approximately four months after the BIA affirmed the denial of Jin's application, no immigration authority has had the opportunity to consider this oddity.[3]

Accordingly, for the reasons stated above, the petition is GRANTED and the order of the Board of Immigration Appeals—insofar as it addresses Jin's application for withholding of removal—is VACATED and REMANDED.

---

**3.** As a separate matter, we echo the comments of earlier panels of this Court that the brief submitted by petitioner's attorney, Karen Jaffe, fails to comply with the requirements of Federal Rule of Appellate Procedure 28(a). *See, e.g., Chang Zhao Chen v. Gonzales*, 162 Fed.Appx. 39, 40 (2d Cir.2006) (warning Ms. Jaffe that any future failure to comply with the Federal Rules of Appellate Procedure would result in sanctions being imposed against her); *Jin Qiu Zheng v. Gonzales*, 163 Fed.Appx. 10 (2d Cir.2005); *Wan Qin Lin v. Gonzales*, 158 Fed.Appx. 324 (2d Cir.2005); *Xian Gui Chen v. Gonzales*, 157 Fed.Appx. 430 (2d Cir.2005); *Shou Qing Liu v. Gonzales*, 157 Fed.Appx. 403 (2d Cir.2005); *Xiu Ming Wang v. Gonzales*, 156 Fed.Appx. 395 (2d Cir.2005). On January 19, 2006, this Court issued Ms. Jaffe an order to show cause why she should not be sanctioned or subject to discipline by this Court pursuant to her conduct with regard to a motion for summary affirmance in *Wong Xing Chen v. Gonzales*, No. 03–40018.