Esther NEMO, Plaintiff,

v.

Herbert A. ALLEN, David Begelman, Alan J. Hirschfield, Leo Jaffe, Irwin H. Kramer, Matthew B. Rosenhaus, Samuel L. Tedlow, James P. Wilmot, Columbia Pictures Industries, Inc. and "John Doe", "Richard Roe", and other "John Does", said names being fictitious, their true names being presently unknown to plaintiff, the parties intended being the present and former officers and employees of Columbia Pictures Industries, Inc. and its subsidiaries who were granted stock options which have been or may be exercised by them pursuant to Columbia Pictures Industries, Inc.'s 1975 Key Employees' Non-Qualified Stock Option Plan as Amended in 1977, Defendants.

No. 78 Civ. 1401 (KTD).

United States District Court, S. D. New York.

Feb. 6, 1979.

Levy & Levy, New York City, for plaintiff.

Milbank, Tweed, Hadley & McCloy, New York City, for defendant Leo Jaffe.

Pryor, Cashman, Sherman & Flynn, New York City, for defendant David Begelman.

Zimet, Haines, Moss & Goodkind, New York City, for defendant Alan J. Hirschfield.

Holtzman, Wise & Shepard, New York City, for defendants Herbert A. Allen and Irwin H. Kramer.

Weil, Gotshal & Manges, New York City, for defendant Columbia Pictures Industries, Inc.

### OPINION

KEVIN THOMAS DUFFY, District Judge:

This is a derivative action brought on behalf of Columbia Pictures Industries, Inc. [hereinafter referred to as "Columbia"], a Delaware corporation, to redress alleged violations of the Securities and Exchange Act of 1934 [hereinafter referred to as "the Exchange Act"] and to recover from the defendant/directors of Columbia for their alleged breach of fiduciary duty and waste of corporate assets. Jurisdiction is predicated both on the Securities Laws and on diversity of citizenship.[1] Plaintiff, Esther Nemo, seeks to have the 1977 Amendment

to Columbia's 1975 Key Employees' Non-Qualified Stock Option Plan declared null and void because approval for it was obtained by means of allegedly false and misleading proxy materials in violation of Section 14(a) of the Exchange Act. Plaintiff also seeks damages from the individual defendants for losses sustained by Columbia and for profits and benefits illegally realized by them.

Defendants have moved, pursuant to Fed. R.Civ.P. 56, for an order granting them summary judgment on the claims seeking equitable relief. They also move to dismiss all damage claims that may have been asserted under Sections 13(a) and 14(a) of the Exchange Act on the grounds that they fail to state a claim on which relief can be granted. Finally, defendant Columbia has moved pursuant to N.Y.Bus.Corp.Law § 627 for an order staying proceedings on the state law claims until such time as plaintiff posts security for Columbia's costs and expenses in this action.

The operative facts are as follows: In October, 1977 Columbia solicited stockholder approval for an amendment to its Key Employees Non-Qualified Stock Option Plan [hereinafter referred to as "Stock Option Plan"]. The amendment had the effect of increasing the number of shares available under the Plan, although it conferred no rights directly on any eligible employee. Plaintiff claims that the proxy materials pursuant to which stockholder approval was sought were misleading in that they failed to disclose that David Begelman, the former president of Columbia's motion picture and television divisions, had illegally obtained corporate funds and other emoluments from Columbia in an amount in excess of $80,000. The materials also failed to disclose an alleged plan to retain Begelman's services after his resignation at a higher compensation than that provided for in his contract. Finally, the materials failed to disclose that a key employee had misappropriated $300,000 of Columbia's funds.

---

1. Plaintiff's first amended complaint, although not denominated as a class action, purports to be made on behalf of Columbia as well as all stockholders similarly situated. No class action allegations are set forth, however, and I can only assume that plaintiff does not intend to proceed with this matter in such a posture.

In support of their motion for summary judgment, defendants have submitted the affidavit of Victor A. Kaufman, Vice President, Secretary and General Counsel of Columbia, as well as a copy of the proxy statement in question. The proxy statement revealed that Columbia had recently become aware of certain unauthorized financial transactions between Begelman and the company and that an investigation by outside counsel had been authorized. Begelman had resigned as director and senior executive vice president of Columbia and taken a leave of absence from his operating responsibilities. According to the proxy statement, the amount involved in the transaction known at that date was in the aggregate not material to the company and $35,750 had been repaid.[2]

From the foregoing it is apparent that the misconduct of Begelman was, in fact, revealed. There is simply no requirement in the Securities Laws, as plaintiff suggests, that Begelman's actions be characterized as criminal in nature. All that need be disclosed are the facts from which a stockholder may draw its own conclusion. *See Gulf & Western Industries, Inc. v. Great Atlantic & Pacific Tea Co.*, 476 F.2d 687, 697 (2d Cir. 1973). Since these facts are present in the subject proxy statement, it cannot be said that the materials are false or misleading and thus, this branch of plaintiff's complaint must fail.

■ Furthermore, the Kaufman affidavit, as well as Columbia's Form 8–K filed with the Securities and Exchange Commission on March 10, 1978 and sent to stockholders that same day, make it clear that there was no impropriety in failing to disclose in the October 1977 proxy statement the retention of Begelman as an independent producer. This arrangement was not entered into until after Begelman's resignation from Columbia on February 5, 1978. Thus, it was not in existence when the proxy statement was issued. Plaintiff has

offered nothing but surmise to rebut defendants' proof on this issue and, indeed, has not even submitted an affidavit based on personal knowledge by a person competent to testify about the matters contained therein, as required by Fed.R.Civ.P. 56(e). Mere surmise in a lawyer's affidavit is clearly insufficient to raise the factual questions necessary to preclude summary judgment. *See generally Union Insurance Society of Canton v. Glucklin*, 353 F.2d 946, 952 (2d Cir. 1965).

■ Similarly, plaintiff's claim regarding the defalcation of a "key employee" is without merit. The employee in question, Audrey Lisner, was apparently not "key" at all, but rather was a lower level employee who was not eligible to take part in the stock option plan. ¶ 7, Kaufman affidavit. Moreover, it appears that the defalcation was not discovered until April 1978 and then was promptly disclosed in Columbia's proxy statement of September 29, 1978. (Exhibit F). Once again plaintiff has presented nothing but the conclusory allegations of her attorney to suggest the facts are otherwise than as defendants indicate. Since she has thus raised no issues requiring trial, and has failed to comply with Rule 56(e), summary judgment will enter in favor of defendants. *See generally S.E.C. v. Research Automation Corp.*, 585 F.2d 31 (2d Cir. 1978).

■ Defendants have also moved to dismiss any claims for damages that plaintiff may be predicating on Section 13(a) or 14(a) of the Exchange Act. It appears, however, that her damage claim is based solely on the directors' alleged breach of fiduciary duty. See Page 3, Affidavit of Morris J. Levy, November 16, 1978. In any event, it is clear that no cause of action will lie on these facts for a violation of Section 13(a). No implied right of action for damages exists under that section, which re-

---

2. Plaintiff appears to make much of the fact that the amount of Begelman's embezzlement exceeded $80,000, although the proxy materials do not reveal the exact amount. Yet, plaintiff herself concedes that it is not so much the extent of the embezzlement, as the fact that it happened that is important to shareholders. Memorandum in Opposition to Defendant's Motion, at 8.

**196**

quires that issuers of registered securities file certain information with the Securities and Exchange Commission. *See Lewis v. Elam*, [1977–78 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 96,013 (S.D.N.Y.1977). The only remedy available to a person aggrieved by virtue of such a filing is that afforded by Section 18(a) which provides relief in the form of damages to one who, in reliance on a false or misleading statement filed with the Securities and Exchange Commission, sells or purchases securities which are affected by such statement. Since the instant complaint contains no allegations of such purchase or sale, any claim based on Section 13(a) must fail.

■ Any claim for damages based on Section 14(a) is also deficient since, as indicated above, the wrongdoing of which plaintiff complains is more directly related to a breach of fiduciary duty than it is to a violation of the proxy rules. Plaintiff has not alleged that the increase in the number of shares available under the stock option plan injured Columbia. Rather, she suggests that the later award of these options to a number of individual directors who allegedly breached their fiduciary duties constituted corporate waste. This then is a classic state law action for breach of fiduciary duty and waste. The mere fact that the solicitation enabled defendants to commit a wrong does not bring this case within the ambit of the federal securities laws. *See generally Kammerman v. Pakco Companies, Inc.*, [current] Fed.Sec.L.Rep. (CCH) ¶ 96,318 (S.D.N.Y.1978); *Lewis v. Elam, supra*.

■ This leaves merely the claims based on diversity of citizenship, and the defendants' final motion is for an order staying further proceedings thereon until such time as plaintiff posts security for Columbia's costs and expenses in defending these state law claims. There is no question that under New York State law Columbia is entitled to such security where, as here, plaintiff does not own shares representing five per cent

or more of a class of voting shares or a value exceeding $50,000. N.Y.Bus. Corp.Law § 627 (McKinney Supp.1977). *See also Saylor v. Lindsley*, 302 F.Supp. 1174, 1187 (S.D.N.Y.1969). Plaintiff does not dispute that this statute applies, however, she has requested that, in lieu of posting security, she be furnished a list of Columbia shareholders so that she may seek to join as plaintiffs a sufficient number of shareholders to avoid the security requirement. Columbia does not oppose this request so long as it has an opportunity to reach an agreement with plaintiff's counsel as to the content of the solicitation letter. Since this seems to be the most equitable manner in which to resolve this problem, I will afford the parties four weeks from the date of this opinion to reach an agreement as to the contents of the letter or submit their disputes to me. Until such time as plaintiff joins sufficient additional plaintiffs or posts security of $75,000,[3] the state law claims will be stayed.

---

**3.** Plaintiff asks that only nominal security be required. However, because of the nature of this case and the fact that substantial attor-

neys' fees are likely to be involved, I do not consider security of $75,000 to be excessive.